UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| ALEJANDRO ALANIZ, | ) | |
| | ) | |
| Petitioner, | ) | No. 6:19-CV-08-REW |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY KIZZIAH, Warden, | ) | OPINION & ORDER |
| | ) | |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Alejandro Alaniz is an inmate at the USP McCreary in Pine Knot, Kentucky. Alaniz filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. DE 1. Warden Kizziah responded (DE 8), and Alaniz filed a reply (DE 10). This matter stands ripe for review.

**I**

In 1997, a jury convicted Alaniz of conspiracy to possess with the intent to distribute marijuana and distributing marijuana, in violation of 21 U.S.C. §§ 841 and 846. The case involved aggravated quantities. *See United States v. Alejandro Alaniz*, No. 4:95-cr-170-2, at E.C.F. No. 475 & 477 (W.D. Mo. 1997). On July 29, 1997, the United States District Court for the Western District of Missouri sentenced Alaniz to life in prison. *See id.* at E.C.F. No. 542.

From 1998 through 2007, BOP officials issued Alaniz 12 incident reports, charging him with numerous offenses, including assault, using drugs or alcohol, and possessing a dangerous weapon. As a result of these incidents, various disciplinary hearing officers (DHOs) imposed a range of sanctions against Alaniz, including the loss of good conduct time (GCT). Alaniz ultimately lost a total of 448 days of good conduct time in the period. DE 1-2 at 1; DE 8 at 3–4; DE 8-1 at 3–4. Because Alaniz was serving a life sentence, he was not eligible for credit toward

service of his sentence for satisfactory behavior, *see* 18 U.S.C. § 3624(b)(1), and, thus, the loss of good conduct time did not actually affect his sentence.

In December 2017, per a § 3582(c)(2) resentencing, the trial court amended its original judgment and reduced Alaniz's sentence from life in prison to 384 months. *See Alaniz*, No. 4:95-cr-170-2, at E.C.F. No. 775. Given this amendment, the BOP determined that Alaniz was eligible retroactively for good conduct time credits for each year he served in prison, beginning on July 29, 1997, the date the original sentence was imposed. Therefore, the BOP updated Alaniz's sentence computation sheet to reflect that he earned 985 days of good conduct time and is projected to earn hundreds of additional days of good conduct time as he continues to serve his sentence, further advancing his projected release date. DE 8-1 at 3. However, the BOP also deducted the 448 days of good conduct time Alaniz "lost" because of the disciplinary sanctions imposed during his time in prison to that point. *Id.* Alaniz's good conduct time credits have advanced his projected release date to March 19, 2024.

Alaniz disagreed with the BOP's decision to disallow part of his GCT credit, and thus, he pursued his administrative remedies within the BOP. *See* DE 8-1 at 435–41. Those efforts, however, were unsuccessful and, as a result, Alaniz filed this § 2241 petition with this Court. Alaniz suggests that while he should receive good conduct time credits for each year he spent in prison since 1997, he should not lose any such time as a result of the disciplinary sanctions entered against him over the same period. *See* DE 1. Indeed, Alaniz asks the Court "to order Respondent to reinstate all good conduct time," including the time he lost due to the various DHO decisions. DE 1-1 at 2 (emphasis in original). The U.S. Attorney's Office, on behalf of Warden Kizziah, opposes Alaniz's petition, arguing that it would be illogical and unlawful to give Alaniz the retroactive benefit of GCT eligibility without the corresponding disallowances of GCT credit based on unsatisfactory behavior. The Warden contends that the BOP's calculation hews to its

applicable program statement, which itself offers a reasonable interpretation for how to deal with GCT for a once ineligible but later eligible inmate. DE 8.

## II

Alaniz is not entitled to relief. As an initial matter, the BOP is responsible for calculating and implementing a federal prisoner's sentence. *See United States v. Wilson*, 112 S. Ct. 1351, 1353–55 (1992); *Penland v. Holland*, No. 6:15-cv-183-DLB, 2016 WL 5334663, at *4 (E.D. Ky. Sept. 21, 2016). In making this calculation, the Agency determines when the prisoner's sentence commenced and whether any credits should be applied to that sentence. *See* 18 U.S.C. §§ 3585(a) and 3624(b); *see also Foss v. Quintana*, No. 5:14-cv-258-DCR, 2014 WL 5157305, at *4–5 (E.D. Ky. Oct. 14, 2014) (recognizing that the BOP calculates a federal prisoner's sentence, including the commencement date and the application of any credits); *Padgett v. Hosten*, No. 6:07-cv-450-DCR, 2008 WL 294536, at *3 (E.D. Ky. Jan. 30, 2008) (same).

Here, because the Western District of Missouri amended its original judgment to reduce Alaniz's sentence from life in prison to 384 months, the BOP treated Alaniz's amended sentence as commencing on July 29, 1997, the commencement date on the original judgment. DE 8-1 at 3. That determination is consistent with the BOP's internal Sentence Computation Manual, Program Statement 5880.28, as well as decisions by other federal courts. *See Blood v. Bledsoe*, 648 F.3d 203, 208 (3d Cir. 2011) (discussing Program Statement 5880.28 and explaining that, consistent with the valid Statement, "[w]hen a federal sentence is vacated without disturbing its underlying conviction, the BOP . . . treats the post-remand sentence as commencing on the same date as the original sentence.").

After determining that Alaniz's amended sentence began to run as of July 29, 1997, the date of original sentencing, the BOP applied 18 U.S.C. § 3624(b)(1), the statute discussing a prisoner's

ability to earn credit toward the service of his sentence for satisfactory behavior. The statute provides that

> a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence of up to 54 days for each year of the prisoner's sentence imposed by the court, subject to determination by the [BOP] that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

18 U.S.C. § 3624(b)(1). The statue goes on to say that "if [the BOP] determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as [the BOP] determines to be appropriate." *Id.*

The BOP applied § 3624(b)(1) and awarded Alaniz GCT credits for each year he spent in prison since 1997, totaling 985 days and significantly advancing his projected release date. DE 8-1 at 3. The BOP also disallowed 448 days of good conduct time Alaniz lost (or, more accurately, failed to earn) because of the disciplinary sanctions imposed. *See id.* That is a straightforward, fair, and logical application of § 3624(b)(1), squaring with the Program Statement.

Alaniz repeatedly claims that the BOP violated the plain language of § 3624(b)(1), as well as his due process rights. He argues that from 1997 to 2017, he was serving a life sentence, and, thus, he could not earn (and presumably could not lose) good conduct time credit. DE 1-1 at 1–3. Indeed, Alaniz says that "a prisoner who is serving . . . LIFE, as Alaniz was, is precluded from receiving credit toward his sentence," DE 1 at 4, and then stresses the point by saying, "§ 3624(b) makes clear that prisoner[s] serving LIFE sentences are NOT eligible for credit towards service of their sentence." *Id.* at 5.

There are multiple problems with Alaniz's analysis. First, it ignores the fact that the trial court amended its original judgment to reduce Alaniz's sentence from life in prison to 384 months,

4

and it ignores the corresponding legal authority validating the BOP's decision to commence an amended sentence on the original commencement date. *See, e.g.*, *Blood*, 648 F.3d at 208. Perhaps more importantly, Alaniz ignores the fact that the BOP's recalculation of his sentence worked to his advantage; after all, once Alaniz's sentence was amended, BOP awarded him good conduct time credits for each year he spent in prison back to 1997, totaling 985 days. The BOP did, based on its adjudications over that span, disallow him 448 days for unsatisfactory behavior. If Alaniz's current argument were correct, and he was "precluded from receiving credit toward his sentence" from 1997 to 2017, DE 1 at 4, he would have to serve much more time in prison. Here, the BOP properly makes Alaniz take the bitter with the sweet, giving him the benefit of retroactive credit yet counterbalancing that with the disallowance for adjudicated instances of disqualifying discipline.

Alaniz suggests he should have it both ways, that is, that the BOP should grant him good conduct time credits for each year he spent in prison since 1997 but not also deduct disallowed credit. There is no legal authority for such a double, or one-sided standard. In fact, when another federal district court faced a very similar fact pattern and argument, it pointed out that the "Petitioner has not identified, and the Court is not aware of, any case law, statutes, or regulations which require that the BOP not similarly subtract all disallowance of [good conduct time] based on an undisputed disciplinary infraction." *George v. Stone*, CV 315-073, 2016 WL 385510, at *3 (S.D. Ga. Jan. 4, 2016). The same is true in this case.

A case of this type does involve a trip in a time machine. Alaniz had no credit eligibility for 20 years. Then, suddenly, he no longer faced a life term. To correct matters, the BOP followed its Program Statement and deemed the new sentence as commencing "the same date as the original computation." DE 8-1 at 70 (PS 5880.28, at 1-18). This endeavored to honor § 3585(a), but the BOP still had to reckon with GCT and § 3624(b). Quite logically, and fairly, the BOP treated

Alaniz as if he had been eligible all along. This, it could accurately do, because the BOP's records and disciplinary system tracked Alaniz's year-to-year conduct. Thus, the BOP could determine which years Alaniz had earned credit and which years it had disallowed credit based on misconduct.[1]

Although Alaniz cries foul in being held answerable for poor episodes of institutional compliance, the Court sees leniency in the BOP's approach.[2] After all, the credit statute could be read as blocking the inmate-favorable retroactive construct altogether. It declares, "Credit that has not been earned may not later be granted." § 3624(b)(1). Rather than looking at the actual chronology, the BOP instead deems the judgment on resentencing to supplant the original judgment and places the inmate in the same position he would have occupied, relative to GCT credit, had the ultimate judgment always been in place. This is a reasonable result, comports with the statutes, and warrants acceptance by the Court.[3]

Finally, a few words on Alaniz's due process angle.

Alaniz seems to claim that, because he did not have a GCT right at the time of the disciplinary proceedings in issue, the BOP violated his right to notice that he could receive

---

[1] The BOP's regulation on the subject, 28 C.F.R. § 523.20(e), dictates the credit system but notes that "the amount of good conduct time awarded for the year is also subject to disciplinary disallowance[.]" Alaniz's sources for discipline, including a violent assault, contraband possession, and drug use, can hardly be seen as "exemplary compliance" with BOP disciplinary regulations, the § 3624(b)(1) metric.

[2] The Court sees no basis for applying the rule of lenity. *See Barber v. Thomas*, 130 S. Ct. 2499, 2508–09 (2010) (rejecting application of interpretive rule to § 3624(b) due to absence of "'grievous ambiguity or uncertainty in the statute'") (citation omitted). The BOP's interpretation here logically and rationally meshes otherwise clear statutes in a fairly unique application. The triggers for the interpretive rule are not present.

[3] The Court properly extends some deference to the BOP in weighing its Program Statement in this context. The Statement is not the law but only internal guidance for the BOP. Still, though, the interpretation is rational and persuasive in assessing proper credit in this unique scenario. *See Blood*, 648 F.3d at 208 (extending "some deference" to "permissible construction of statute"); *Reno v. Koray*, 115 S. Ct. 2021, 2027 (1995) (giving "some deference" to BOP for permissible construction of statute as reflected in 5880.28).

discipline impacting GCT. This is a sharp play, given the sequence. It is true that Alaniz could not have received GCT credit under the original life term. However, the BOP, in assessing his alleged misconduct through the years, made a series of point-in-time adjudications regarding his compliance with BOP institutional rules. Those adjudications made findings about Alaniz's behavior and imposed sanctions triggered by such conduct. The sanctions often included GCT loss, but always included some companion penalty (or penalties) such as segregation, lost privileges, and other consequences. Thus, while the GCT issue may have been academic at the time, the disciplinary process and rights afforded were real and tracked both *Wolff v. McDonnell*, 94 S. Ct. 2963 (1974), and the BOP's disciplinary regulations. The Court sees no basis for a notice complaint in this context; Alaniz had been through the BOP A&O process and had participated in hearing after hearing where the DHO ultimately took action including GCT disallowance. To treat the sequence as creating a due process issue would unfairly benefit Alaniz without accounting properly for his actual, adjudicated misconduct over the period of his incarceration.[4]

---

[4] In Alaniz's reply brief, he refers to this argument as "his original due process claim." DE 10 at 6. Alaniz then tries to add other another due process argument in reply, claiming for the first time that prison officials violated his rights under *Wolff*, 94 S. Ct. 2963 (1974), by not notifying him of his right to have a staff member or inmate assist him at his disciplinary hearings. DE 10 at 4–6. The United States Court of Appeals for the Sixth Circuit, however, has made it clear that arguments made for the first time in a reply brief are not properly before the district court. *See, e.g., Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). Plus, Alaniz cites no legal authority that would allow him to claim, in one omnibus habeas case, that prison officials violated his due process rights in connection with at least ten different disciplinary proceedings.

The Court also must note several things from the record, in this regard. The Warden appended Alaniz's full disciplinary proceedings history. That history showed multiple occasions through the years where Alaniz faced disciplinary proceedings, including ones involving GCT credit loss, in which the BOP expressly notified Alaniz of his right to staff representation. *See* DE 8-1, at 291, 294, 299, 302, 303, 309, 312, 314, 318, 368, 410, 327, 329. In some of those, he had such representation, and in most, he expressly waived. Alaniz does not make a proper claim via his novel reply theory, but the factual basis for the argument is itself lacking, as this sampling from the record demonstrates.

## III

For the foregoing reasons, the Court **DENIES** Alaniz's petition brought under 28 U.S.C. § 2241. A corresponding Judgment follows.

This the 2nd day of December, 2020.

Signed By:
*Robert E. Wier*
United States District Judge